# IN THE DISTRICT COURT FOR THE STATE OF ALASKA

## FIRST JUDICIAL DISTRICT AT JUNEAU

LYNCH AND KENNEDY DRY GOODS, INC.,

    Plaintiff,

    v.

AMERICAN FIRE AND CASUALTY COMPANY,

    Defendant.

**SUMMONS AND NOTICE TO BOTH PARTIES OF JUDICIAL ASSIGNMENT**

Case No. 1JU-17-_684_ CI

To: American Fire and Casualty Company

**YOU ARE HEREBY SUMMONED** and required to file with the court an answer to the complaint that accompanies this summons. Your answer must be filed with the court at P.O. Box 114100, Juneau, AK 99811-4100 within 20 days* after the day you receive this summons. In addition, a copy of your answer must be sent to the plaintiff's attorneys, Poulson & Woolford, LLC, whose address is 636 Harris Street, Juneau, AK 99801.

IF YOU FAIL TO FILE YOUR ANSWER WITHIN THE REQUIRED TIME, A DEFAULT JUDGMENT MAY BE ENTERED AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

If you are not represented by an attorney, you must inform the court and all other parties in this case, in writing, of your current mailing address and future changes to your mailing address and telephone number. You may use court form Notice of Change of Address/Telephone Number (TF-955), available at the clerk's office or on the court system's website at www.state.ak.us/courts/forms.htm, to inform the court.-OR-If you have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

## NOTICE OF JUDICIAL ASSIGNMENT

To Plaintiff and Defendant:

**YOU ARE HEREBY GIVEN NOTICE** that this case is assigned to Judge _Thomas G. Nave_.

_5|16|17_
Dated

By: _____
Deputy Clerk of Court

*The state or a state officer or agency named as a defendant has 40 days to file its answer. If you have been served with this summons outside the United States, you also have 40 days to file your answer.

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

LYNCH AND KENNEDY DRY GOODS, INC.,

Plaintiff,

v.

Clerk of the Trial Courts

By _____ A13 _____ Deput

AMERICAN FIRE AND CASUALTY COMPANY,

Defendant.

Case No. 1JU-17-684 CI

## COMPLAINT FOR DECLARATORY RELIEF RE:
## DEFENDANT'S DUTY TO DEFEND AND FOR DAMAGES

In this insurance coverage case, plaintiff, Lynch and Kennedy Dry Goods, Inc. ("L&K") sues for declaratory judgment that its general liability insurer, Defendant American Fire and Casualty Company ("AFCC") is obligated to defend L&K in the underlying action seeking damages in the form of fines and penalties ordered by the court in monetary sums for making purportedly misleading or deceptive statements in connection with its promotion of art work including sculptural and fine art pieces which the United States of America, Civil Division, asserted were improperly represented to be Indian made goods when they were in fact made by an Alaskan citizen who is not of American Indian Ancestry.

### THE PARTIES

1.      The plaintiff, L&K, is a corporation organized and existing under the laws of Alaska with its principal place of business at Skagway, AK 99840. L&K is a citizen of Alaska.

2.      L&K began selling artwork including sculptural pieces from its retail establishment in Skagway, Alaska which advertised for sale via display product tag labeling and artist biography display and distribution Indian/Eskimo, as well as Alaskan artwork produced.

3.      Defendant, AFCC, is a foreign corporation providing property/casualty insurance in Alaska.

### JURISDICTION, VENUE AND APPLICABLE LAW

4.      This court has subject matter jurisdiction pursuant to AS 22.15.030(a)(1).

5.      This court has personal jurisdiction over the defendant under AS 21.

COMPLAINT FOR DECLARATORY RELIEF
*Lynch and Kennedy v. American Fire*
Page 1 of 22

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6529 Facsimile



6. Venue is proper in Juneau pursuant to Ak. R. Civ. P. 3(c).

7. AFCC sold and issued its insurance policy to L&K in this district. AFCC sells insurance to defense lawsuit in this district.

8. This district has placed performance under the policy and Alaska governed law governs AFCC's obligations to L&K.

## AMERICAN FIRE AND CASUALTY COMPANY'S POLICIES

9. AFCC issued to L&K a primary commercial general liability policy for the period June 26, 2011 through June 26, 2012 (the "Policy"). The Policy provides coverage for "personal and advertising injury" caused by an offense committed during the Policy period, and defense of suits that seek those types of damages. A copy of the Policy, No. BZA(12) 54 19 31 62, is attached as Exhibit 1.

10. Pertinent AFCC Policy language from June 26, 2011 to June 26, 2012 includes:

**Coverage B - Personal and Advertising Injury Liability**

**1. Insuring Agreement**

    **A.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages .
. . .

**V - DEFINITIONS**

14. "Personal and advertising injury" means injury . . . arising out of one or more of the following offenses: . . .

    . . . .
    (f) use of another's advertising idea in your "advertisement";

        1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments of values, goods or services for the purpose of attracting customers or supporters.
    . . . .

## THE UNDERLYING ATTORNEY GENERAL'S 18 U.S.C. 1159(a) AND (b) ACTION

11. On March 3, 2016, the United States attorneys' office, Juneau Division, filed an

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

COMPLAINT FOR DECLARATORY RELIEF
*Lynch and Kennedy v. American Fire*
Page 2 of 22

information against defendants Judy M. Gengler ("Ms. Gengler") and Rosemary V. Libert ("Ms. Libert"), doing business as Lynch and Kennedy Dry Goods, Inc. ("L&K"). Ms. Gengler was an employee of L&K at all pertinent times.

12.     The information sought damages in the form of fines and penalties calling for money ordered by a court for alleged violations of Title 18 U.S.C. § 1159(a) and (b)(1)(B)(i) filed March 3, 2016. A copy of the *AG Info Suit* is attached hereto and incorporated herein as Exhibit 2. The Attorney General's Information ("AG Info") makes the following allegations of misleading or false public statements in support of its claim of violation of 18 U.S.C. § 1159(a) and (b)(1)(B)(i):

### INDIAN ARTS AND CRAFTS ACT

4.     Under the Indian Arts and Crafts Act (IACA) makes it unlawful, to offer, display for sale, or sell any good in a manner that falsely suggest that it was Indian produced, an Indian product, or the product of a particular Indian tribe, resident in the United States. 18 U.S.C. § 1159.

. . . .

### USFWS UNDERCOVER INVESTIGATION

9.     On July 23, 2014, an undercover U.S. Fish and Wildlife Service (USFWS) agent entered into the [L&K] and contacted Ms. Gengler and asked her about a bone carving carved by an artist the agent knew was not an Alaska Native or member of any American Indian tribe. [Gengler] falsely represented that the bone carving was made by an individual who was "Native or First Nation" and "Eskimo." [Gengler] said that "First Nation" was similar to an Indian or American Indian tribes in the lower 48 and "Eskimos" were "Natives" who lived way up in the Artic. [Gengler] offered to sell the carving to the agent for $2,000. The undercover agent subsequently left and returned to the store a short time later. The undercover agent again contacted [Gengler] and advised that the artist that she previously represented as an "Eskimo" and "Native" was born in Cambodia and was not Native Alaskan or Eskimo. [Gengler] showed the agent a biography on the artist. [Gengler] responded that the artist was from Cambodia; and then falsely stated that the artist was adopted into a family in Juneau and given an "Eskimo" name.

10.     On September 24, 2015, a USFWS agent contacted

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

[Gengler]. The USFWS agent identified himself as a USFWS agent and asked [Gengler] if she knew that the particular artist who carved the bone sculpture offered for sale on July 23, 2014, was Alaska Native. [Gengler] told the agent that the artist was not "Native" and not a member of an American Indian tribe. [Gengler] stated they did not have a biography on the artist.

11.     On September 22, 2014, the same undercover USFWS agent contacted [Libert] at the owner's business email for [L&K] about the same bone carving and artist identified on July 23, 2014 by [Gengler]. The agent asked [Libert] in the email if the artist was Alaskan Native or Native American. [Libert] responded the artist "is NOT native Indian or eskimo (Alaskan native). He is a native Alaskan (resident of Alaska) for many years."

12.     On June 30, 2015, the same undercover USFWS agent entered into [L&C] and contacted [Libert] and asked her about a bone carving carved by an artist the agent knew was not an Alaska Native or member of an American Indian tribe. [Libert] falsely represented that the bone carving was made by an individual who was "Eskimo" and an "Alaskan Native." The agent subsequently purchased the bone carving for $1,165.50 and confirmed that the artist was not Alaska Native or American Indian.

13.     On September 24, 2015, two USFWS agents contacted [Libert.] The two USFWS agents identified themselves as USFWS agents and asked [Libert] if she knew that the particular artist who carved the bone sculpture sold on June 30, 2015, was Alaska Native. [Libert] told the agents that the artist was not "Native" and was not a member of an American Indian tribe. [Libert] stated the supplier, whom she has known for over 20 years and purchased the bone carvings from, has never misrepresented to her that the artist was "Native," only that the carvings were made in Alaska. [Libert] explained to the agents that "Native" is "Eskimo or the northwest coast Inuit's."

14.     The artist who made the bone carvings lives and works in Alaska but is not an Alaska native or member of any American Indian tribe.

## COUNT I

. . . .

16.     On or about July 23, 2014, the defendant [Gengler], within the District of Alaska, did knowingly offer and display for sale goods, specifically a bone carving that was not made by an Alaska Native, in a

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

manner that falsely suggested these goods as being Indian produced and Indian products, in particular that they were authentic Alaska Native handicrafts knowing that they were not.

All of which is in violation Title 18, United States Code, §§1159(a) and (b)(1)(B)(i).

### COUNT II

. . . .

18.    On or about June 30, 2015, the defendant [Libert], within the District of Alaska, did knowingly offer and display for sale and sell goods, specifically a bone carving that was not made by an Alaska Native, in a manner that falsely suggested these goods as being Indian produced and Indian products, in particular that they were authentic Alaska Native handicrafts knowing that they were not.

All of which is in violation Title 18, United States Code, §§1159(a) and (b)(1)(B)(i).

### L&K's NOTICE TO AFCC AND ITS DENIAL OF COVERAGE

13.    L&K, through its insurance broker, promptly repeatedly notified AFCC of the underlying AG Info complaint against it after the underlying action was successfully resolved in Plaintiff's favor. AFCC, without any reliance on purported claims of late notice and acknowledging that the notice was provided after a successful resolution of the AG Info suit failed and refused and defend and reimburse defense fees incurred in the AG Info suit, claiming that there was no "advertising injury" coverage. No other grounds for denial were referenced specifically in the letter.

14.    Misleading and deceptive trade practice allegations under 18 U.S.C. §1159(a)(b) established the potential for coverage.

### A FIVE ELEMENT TEST APPLIES TO THIS OFFENSE

15.    AFCC's policy defines "personal and advertising injury" containing five elements relevant here:

(1)    "damages because of" advertising injury;

(2)    injury arising out of . . . "use of another's advertising idea in your 'advertisement'";

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6529 Facsimile

(3)    "advertising idea"/use

(4)    of another's; and

(5)    "advertisement"

Each element is met by the allegations of the AG Info, thereby triggering AAFC's duty to defend L&K in the AG Info suit.

**ELEMENT ONE IS MET: "DAMAGES BECAUSE OF 'PERSONAL AND ADVERTISING INJURY'"**

16.    AFCC promised "to pay sums that the insured becomes legally obligated to pay as "damages because of 'personal and advertising injury' . . ."

17.    The alleged wrongful acts for which underlying money damages are sought include false, misleading or deceptive advertising that goods were Native Indian or Eskimo when they were not.

18.    The "damages because of 'personal and advertising injury'" Policy language only requires that "damages" (as opposed to injunctive relief alone) be available under a "personal and advertising injury" offense. Damages are defined to include "money ordered by a court" — fines and penalties or money ordered by a court.

19.    Although AFCC could have chosen to define damages narrowly by excluding any fine or penalty from its definition as other insurers have done in similar policies, AFCC chose not to do so here and this court may not be, under the guise of interpretation, rewrite the policy language for AFCC's benefit.

**ELEMENT TWO IS MET: "INJURY ARISING OUT OF" A LISTED "OFFENSE"**

20.    The AFCC Policy defines "personal and advertising injury" as any "injury" ... arising out of" a listed *offense*.

21.    "Arising out of," undefined in the Policy, is a term of much broader significance than "caused by." The term "arising out of" is ordinarily understood to mean "'originating from" "having its origin in," "growing out of" or "flowing from" or, in short, incident to, or having connection with.

22.    Insurers may use a word with a broad meaning or multiple meanings for that very

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6529 Facsimile

reason — its breadth — to achieve a broad purpose.

23. A court cannot presume that the insurers intend the narrowest policy construction of a policy term. Instead, the reverse is true.

24. "Arising out of" does not require "proximate causation." It is satisfied by some level of material contribution between advertising and the pertinent offense, here the offense of "use of another's advertising idea in your advertisement."

25. When the offense *is the use* of another's advertising idea in an advertisement, the material connection between the advertising idea and the advertisement fits the Policy definition.

26. The *AG Info Suit* alleges L&K's *use* of (another's) advertising ideas to promote sales, that is, attributing the Native or Eskimo origin to art made by an Alaskan native who is neither native or Eskimo according to the allegations of the Complaint.

27. The "injury" and "damages" are different. The "personal advertising injury" allegedly occurred for being misled about the origin of the products. The money chargeable for plaintiff's violations flowed from that injury.

28. Therefore the injury alleged in the underlying cases potentially "arises out of" the listed offense of "use of another's advertising idea in the insured's advertisement."

### ELEMENT THREE IS MET: "ADVERTISING IDEA USE" IS ALLEGED

### HISTORY OF 2004 ISO CGL POLICY FORM

29. The "personal and advertising injury" coverage in the AFCC Policy is set forth in a Commercial General Liability Coverage ("CGL") Form CG 00 01 12 04 from the Insurance Services Office ("ISO") 2004 policy forms for "personal and advertising injury", an insurance industry organization that develops standard insurance policy forms and obtains multiple state insurance department approvals of those policy forms; insurers can then sell policies using those forms without having to seek separate regulatory approval. AFCC's Policy, **Exhibit 1,** incorporates ISO form CG 00 01 12 04, commonly referred to as the "04 ISO CGL Form," which contains a 2004 revision of the definition of "advertising injury,"

30. The original 1976 ISO CGL policy form covering "advertising injury" included the

COMPLAINT FOR DECLARATORY RELIEF
*Lynch and Kennedy v. American Fire*
Page 7 of 22

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

offenses of "piracy" and "unfair competition" which could cover many underlying claims including false advertising although false advertising was not specifically mentioned.

31.     The 1986 ISO policy form no. CG 00 01 11 85 modified its CGL Form to delete the words "unfair competition" and "piracy" from the definition of "advertising injury" and replaced those terms with the single offense of "misappropriation of advertising ideas or style of doing business." But ISO explained to state insurance regulators that the revised definition of "advertising injury" implicated "no change" in the scope of coverage. ISO's 2-11-84 Explanatory Memorandum to state insurance departments about the 1986 CGL form states that the revised policy language simply "paralleled" the existing coverage (1976) provisions, and did not effect any substantive change in this coverage. Therefore the new offense language can be understood to include things that were otherwise covered as "unfair competition."

32.     After the 1986 revision the ISO became concerned that the "advertising injury" offense of "misappropriation of advertising ideas or style of doing business" needed to be clarified to address claims beyond common law misappropriation and embrace a conduct such as the various forms of unfair competition that were expressly covered under the 1976 ISO policy provision. Its scope included not only a wrongful taking of another's advertising idea but the preferred dictionary definition, misuse of another's advertising idea, which necessarily included claims where the claimant's advertising idea was not being "taken," but merely "used." There was nothing in the predecessor misappropriation terminology that suggests it must be a misappropriation of a *competitor's* advertising idea.

33.     ISO's concerns eventually led it in 1998 to further revise the definition of "advertising injury" by combining "advertising injury" and "personal injury" in the new Coverage B of "personal and advertising injury" with an expanded scope.

34.     The ISO revision of the 98 ISO CGL, Form CG 00 01 07 98, replaced two prior "advertising injury" offenses: "misappropriation of advertising ideas or style of doing business" and "infringement of copyright, title or slogan." It substituted two rephrased "personal and advertising injury" offenses entitled "the use of another's advertising idea in your 'advertisement' " and

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

"Infringing upon another's copyright, trade dress or slogan in your 'advertisement.' "

35.    ISO's report to the state regulators explaining its 98 ISO CGL form, Form Filing GL-97-097FR, stated that "that taken as a whole, the revised Personal and Advertising Injury coverage is at least equal to, if not broader than, that which the current coverage provides."

36.    In 2001 an intellectual property exclusion was added to the 1998 ISO CGL Policy Form.  The 2004 revision, which adopted the same policy language, made clear that the intellectual property exclusion clarified that offense (f) — "use of another's advertising idea in your 'advertisement'" fell outside the scope of the policy's intellectual property exclusion as an IRMI CLI — ISO CGL Cov. B Insuring Agreement article made clear.

37.    The exclusion makes clear that the "other intellectual property rights" to which it applies do not include one particular form of intellectual property — advertising ideas themselves. The use of someone's advertising idea in the insured's advertisement specifically does not include one particular form of intellectual property not included under exclusion (i). In fact, "the use of another's advertising idea in the named insured's advertisement," as a defined personal and advertising injury offense is specifically covered under Coverage B of the CGL policy.  ISO Properties, Inc. ©2006. A copy of this Circular is attached as Exhibit 3.

38.    The AFCC policy contains the 2004 ISO CGL Form which defines "personal and advertising injury" to include offense of "the use of another's advertising idea in your 'advertisement'" instead of the "advertising injury" offense of "misappropriation of advertising ideas or style of doing business." The two offenses are not the same.

### AN "ADVERTISING IDEA" IS BROADLY CONSTRUED

39.    "Advertising idea" is undefined in the AFCC Policy but the new offense is potentially broader.

40.    The words in an insurance policy are to be interpreted according to the plain meaning which a layman, not an attorney or insurance expert, would ordinarily attach to the words.

41.    In the AFCC Policy, the plain meaning of "advertising" is the calling public attention to the merits of one's product so as to encourage purchase of the product. Thus, an "advertising idea"

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

can be any idea or concept related to the promotion of a product to the public.

42. An "advertising idea" need not be limited to positive qualities of an insured's products but can include anything related to their promotion that renders them desirable, or anything related to their promotion. These can include statements that justify a higher price.

43. The AG *Info Suit* complaint alleges that public statements were made by defendants to promote sales of products by justifying higher prices as being market-driven.

44. An "advertising idea" can appeal to the many ways consumers make choices. This includes distinguishing between products that are made by Indians or Eskimos rather than Alaskan Natives. A preference in accord with the statutory protection afforded Alaska and Eskimo people in the FCAA.

### "USE" MEANS "EMPLOYED"

45. "Use" of an advertising idea is not limited to misappropriation of an advertising idea.

46. "Use of another's advertising idea" does not imply a wrongful taking.

47. "Use" is not defined in the AFCC Policy. Reasonable insureds rely on dictionaries defining "use" as meaning "to employ for some purpose; put into service . . . apply to one's own purposes" and "the application or employment of something."

48. "Use" must be interpreted as different from and broader than "misappropriation." Otherwise there would have been no reason for the ISO to replace the language in the policy form.

49. If the offense of "use of another's advertising idea" were not broader than the former offense of "misappropriation of advertising ideas or style of doing business," the ISO would not be able to report to state insurance regulators, as it did, that the change in the 98 ISO CGL Form resulted in coverage that might be "broader than" the coverage under the old offense language.

50. A "use" need not be wrongful in itself but can be an offense if injuries allegedly arise out of that use, such as by misleading the public to pay higher prices.

51. "Use" is a term with significantly broader meaning than "misappropriation" and includes misuse, as well as forms of wrongful taking.

52. It does not matter that there is no specific tort styled as "Use of Another's

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

Advertising Idea."

53. It is improper to apply a narrow tort label to the undefined generic and lay phrase "use of another's" offense in AFCC's Policy or to narrowly interpret the Policy language.

54. The scope of an insurer's duty to defend does not depend on the labels given to the causes of action in a third party complaint. A proper liberal approach to the duty to defend recognizes the reality that notice pleading does not contemplate detail and specificity and a complaint may initially lack detail necessary to conclusively establish the duty.

### "USE" DOES NOT REQUIRE "WRONGFUL TAKING" OF AN "ADVERTISING IDEA"

55. The "use of another's advertising idea" offense in the AFCC Policy is broader than the predecessor offense of "misappropriation of advertising ideas." "Use," not "misappropriation," is required. There is nothing limiting "use of an advertising idea" to a laundry list of theories or causes of action. No wrongful taking is required by the Policy language.

56. Insurance policy language is considered ambiguous when it is capable of two or more constructions, both of which are reasonable.

57. The offense of the "use of another's advertising idea" may be considered ambiguous because it is susceptible of two or more plausible meanings including misuse, as well as a wrongful taking of another's advertising idea.

58. Even if the AFCC Policy offense of "use of another's advertising idea" had the same meaning as "misappropriation of advertising ideas or style of doing business," there would be a potential for coverage because the ambiguous offense language could reasonably be expected to cover a false advertising claim as made here.

59. "Use of another's" does not require "infringement" thereby limiting its scope to claims brought by the owner of an advertising idea, much less a competitor.

60. The "use of another's" also cannot be limited to a direct claim by the underlying plaintiff for a wrongful taking of his advertising idea because that would require the impermissible addition of words not included in the Policy, i.e.: "use of the advertising idea of [*the claimant suing the insured*] in your 'advertisement.' "

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6529 Facsimile

61.     AFCC's duty to defend exists when any allegation is potentially covered. An insurer can be excused from defending its policyholder only if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage.

62.     The underlying cases allege injury arising out of the "use of another's advertising idea in L&K's advertisement."

### ELEMENT FOUR IS MET: THE ALLEGATIONS AND EVIDENCE SATISFY "OF ANOTHER'S"

### NO CONTEXTUAL LIMITS ON THE TERM "ANOTHER'S ADVERTISING IDEA"

63.     L&K was sued for use of another's advertising idea that allegedly violated a specific statutory false advertising law of the IACA. The claim fits within AFCC's coverage because L&K is not the "advertising idea's" originator.

64.     Specific L&K advertising statements are alleged, which accused L&K of using others' (Eskimo and Native Indian) advertising ideas.

65.     AFCC's "personal and advertising injury" coverage responds to claims of damages for violation of certain rights that are not primarily to protect a business entity (although a business might have an ancillary benefit) but protect the public and consumers. The AFCC Policy definition of "personal and advertising injury" includes infringement of copyright, trade dress or slogan "in your advertisement." The fundamental purpose of those rights along with unfair competition and false advertising prohibitions is primarily to protect the public and especially consumers from misleading or deceptive advertising.

66.     For coverage purposes it is not relevant who loses money or property from any alleged wrongful act. The question is whether the public is harmed by the wrongful advertising act.

67.     Similarly related claims within the ambit of "use of another's advertising idea in your 'advertisement' " cover other miscellaneous offenses against the public and consumers, such as statutes prohibiting misleading or deceptive advertising or trade practices.

68.     It is not necessary that a competitor or even a business bring a claim within the ambit of offense (f) of AFCC's "personal and advertising injury" coverage. The use "of another's" advertising idea in your advertisement includes ideas that harm consumers when they are misleading

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6529 Facsimile

or deceptive.

69. No offense is committed, no injury arises and no damages flow from the use of advertising ideas that are truthful and not deceptive. So no insurance defense or indemnity is required. But using an advertising idea of another is inherently harmful if it tends to mislead or deceive the public or consumers, whether or not some competitor complains about it.

70. Providing coverage for "use of another's advertising idea in your 'advertisement'" is logical to provide indemnity coverage for an insured who is accused of harming the public or consumers through advertising conduct. Defense of such claims is even more important today when businesses are accused of harming the public by their advertising, often without a good basis.

71. While an exclusion cannot expand coverage that does not exist under the insuring agreement, it can help to resolve an ambiguity in an insuring clause in favor of coverage. It may be considered part of the general circumstances impacting an insured's objectively reasonable expectations as to the scope and extent of coverage under a policy.

72. AFCC's Policy only requires that the "advertising idea" in issue *not* be the insured's original idea. Insurers do not extend this coverage to business that routinely generate *new* advertising ideas that might be more risky. That is why the policy form specifically excludes coverage for a few offenses including the offense of "use of another's advertising idea in your 'advertisement' " for "an insured whose business is advertising, broadcasting, publishing, or telecasting."

73. Construing the phrase "of another" to mean "advertising ideas" that were not originated by the insured poses a smaller actuarial risk to insurers who need not insure against newly created advertising concepts, whose originality may generate litigation disputes, as is true of those falling within the "advertising" business exclusion.

74. There is no requirement in the AFCC Policy that the "advertising idea" originate with the claimant. There is no requirement that the advertising idea originate from a competitor.

75. There is no contextual, public policy, or logical significance to who originated or owns the legal rights to the "advertising idea in question.

A CONTEXTUAL REASONABLE MEANING OF "OF ANOTHER'S" IS SATISFIED

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

76.     "Another" is dictionary-defined as "one that is different from the first or the present one," or "a different one."

77.     The 2004 ISO CGL Form used in AFCC's Policy replaced the prior "advertising injury" offenses: "misappropriation of advertising ideas or style of doing business" and "infringement of copyright, title or slogan" in the earlier 1986 ISO policy form with the "personal and advertising injury" offenses: "(f) the use of another's advertising idea in your 'advertisement' " and "(g) infringing upon another's copyright, trade dress or slogan in your 'advertisement.' " Offense (g) covers specific advertising ideas (infringement) or taking and use without authorization of a claimant's advertising ideas contained in copyrights, trade dress or slogans. The separate offense "(f) the use of another's advertising idea in your 'advertisement' " must therefore at a minimum cover the use of advertising ideas that belong to someone other than the claimant in the underlying case. Otherwise the two offenses would cover the same conduct resulting in a redundancy which is to be avoided in construing insurance policies.

78.     Dictionaries define the plain and ordinary meaning of words in an insurance policy if they have no express definition in a policy.

79.     Dictionaries define "Another" as "different or distinct from the one first considered" or, "a different one."

80.     Dictionaries define "Of" as "used to indicate possession, connection or association."

81.     Taking these defined meanings together "of another" can reasonably mean "connected to or associated with a different or distinct one" with no limiting definitional requirements that the idea be "connected" or "associated with" a claimant or any particular person.

82.     As long as there is a possibility that the "advertising idea" at issue in the underlying cases was "of another" as reasonably defined, the potential for coverage exists.

83.     Use "of another's" "advertising idea" is also potentially alleged because L&K is *only* one of many parties alleged to have violated the IACA by false advertisement. Indeed, courts have found that transgression of this statute are covered, inferentially establishing that L&K could not have fathered the idea.

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

#### Ambiguous "Of Another" Language Must Be Interpreted In the Insured's Favor

84.　L&K's interpretation of the "of another's" language is a correct plain meaning but even if AFCC were to propose a distinct reasonable interpretation, which it did not in its letter denying coverage, the AFCC Policy can also reasonably be read to cover claims about "advertising ideas" that belong to anyone other than the insured. If AFCC's interpretation were also reasonable, this would only make the language ambiguous, requiring that it be interpreted in favor of L&K.

85.　Even if an insurer's narrower interpretation of policy language is considered reasonable, courts must resolve policy ambiguities in favor of the insured. The insurer can avoid coverage only if it can establish that its preferred interpretation is the *only* reasonable one. Courts are not required to select one "correct" interpretation from the variety of suggested interpretations.

86.　Thus even if AFC proffered another reasonable construction of the Policy, which was reasonable, courts must resolve this contractual uncertainty in favor of the insured.

#### Use of Another's Misleading Advertising Idea Is Covered By the Policy

87.　Before even considering exclusions, a court must examine the coverage provisions to determine whether a claim potentially falls within the policy terms because the exclusions can only limit coverage that otherwise exists.

88.　Allegations of an IACA protected "advertising idea" to properly acknowledge and advertise goods as Indian or Eskimo made only when that is allegedly violative conduct fits reasonably within the "personal and advertising injury" coverage of the policy.

89.　The "use of another's advertising idea" can cover false advertising claims.

90.　The 2004 ISO CGL Form in AFCC's Policy also contains an exclusion for "personal and advertising injury" "arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement,' " which AFCC did not assert as its grounds for denial of coverage. If there were no coverage for false advertising outside this exclusion, there would be no reason to have such an exclusion.

91.　The 2004 ISO CGL Form used in AFCC's Policy contains an exclusion for "personal and advertising injury" "arising out of wrong description of the price of goods, products or services

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

stated in your 'advertisement.'" If there were no coverage for false advertising outside this exclusion, there would be no reason to have such an exclusion, as some forms of unfair competition are premised on inaccurate pricing descriptions.

92. If there was no affirmative coverage for false advertising or misrepresentation in advertising, then a policy exclusion would be unnecessary. In light of this ambiguity, the plain meaning of the words in the policy must be construed in favor of the insured.

### ELEMENT FIVE IS MET: IN YOUR "ADVERTISEMENT"

### THE "USE" NEED MERELY OCCUR "IN [THE INSURED'S] ADVERTISEMENT"

93. There is no requirement that injury be caused by advertising. The Policy instead requires that the injury be caused by an offense that is committed in the course of advertising.

94. The "in your" advertisement element is like the "in the course of" causation element in the prior 1986 ISO CGL policy form that required "advertising injury" be caused by an offense "committed in the course of advertising [the insured's] goods, products or services."

95. The same nexus was satisfied for the earlier "misappropriation of advertising ideas" offense where the offense merely occurred in advertising of products. Coverage exists here when the advertising idea is used in the insured's advertisement.

96. The AFCC Policy only requires that the "use of another's advertising idea" be "in [the insured's] 'advertisement.'"

97. Although "causation" is not mentioned in the Policy, some courts have required that a "causal nexus" exist between the insured's advertising activity and the alleged injury suffered.

98. Under AFCC's Policy language the law only requires that a causal connection must link the *advertisement* and the alleged *advertising injury*.

99. There is a direct connection here between the advertisements (allegedly false public statements that artisanal products are Indian or Eskimo made in compliance with the IACA and the advertising injury (the alleged deception of the underlying plaintiffs) purportedly violates the statutory scheme and misleads the public.

100. The underlying plaintiffs allege that the defendants' false and deceptive advertising

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

COMPLAINT FOR DECLARATORY RELIEF
*Lynch and Kennedy v. American Fire*
Page 16 of 22

caused them injury and the statute makes the alleged statements directly actionable.

### PUBLIC STATEMENTS ABOUT PRICES AND INCREASES ARE "ADVERTISEMENTS"

**101.** "Advertisement" is defined in the Policy as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." A "notice" is an intimation of something. Published, includes a public announcement or dissemination to the public. Therefore an "advertisement" under AFCC's Policy, includes a "public announcement of" "an intimation of something" about the insured's products for the purpose of attracting customers.

**102.** The Policy does not limit an "advertisement" to paid messages or commercials. Any public statement is an advertisement if it relates to the policyholder's products and is meant to attract customers or supporters. Any attempt to construe "advertisement" as limited to certain forms advertising would impermissibly add words of limitation to the Policy.

**103.** The Policy requirement of "advertisement" is met here because L&K, through Gengler and Libert "did knowingly offer and display for sale goods, specifically a bone carving that was not made by an Alaska Native, in a manner that falsely suggested those goods as being Indian produced and Indian products, in particular, that they were authentic Alaska native handcrafts knowing that they were not." [Count 1, ¶16 and Count 2, ¶18.]

**104.** The defendants are expressly alleged to have publicly promoted their products through the dissemination of price justification, a form of "advertising."

### NARROW CONSTRUCTION OF "ADVERTISEMENT" IS CONTRARY TO ALASKA LAW

**105.** A narrower construction of AFCC's defined term "advertisement" is contrary to Alaska law. Complaint allegations need not track precisely the policy's language.

**106.** Requiring any more specificity in the character of the promotional material to satisfy the policy's "advertisement" criterion, where "notice to a target market segment" – notice advertised through widespread dissemination of material to the public – suffices, would rewrite the Policy language for AFCC's benefit. So would substituting "advertise" for "publish" in the definition of "advertisement."

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

107. The alleged use of a statutory protected advertising idea triggered AFCC's duty to defend.

### EITHER PRONG OF "ADVERTISEMENT" IS EASILY MET BY ALLEGATIONS

108. The AFCC Policy context requires giving a definitive meaning to the word "or." "Advertisement" is defined as a "notice" "to the general public *or* specific market segments." This means that an "advertisement" happens, as here, a "notice [] is . . . published to . . . specific market segments. . . ," those members of the public who view artisanal pieces which serve as an advertising idea for the product depicted when they display for sale products.

109. Although notices to the public are expressly pled, there is no requirement that a notice be "broadcast" to the general public, nor does "published" require dissemination to a larger audience.

110. The defendants' statements were allegedly "published" both to the public and to specific market segments. The underlying suits allege public statements and public display.

111. The statements attributed to defendants about the Indian Made character of their product were public pronouncements.

### AFCC'S DENIAL OF POTENTIAL COVERAGE IS IMPROPERLY PREMISED ON THE ADDITION OF WORDS OF LIMITATION NOT IN THE POLICY UNDER THE GUISE OF INTERPRETATION

112. AFCC may not add words of limitation to its Policy, under the guise of "policy interpretation," in order to avoid the potential for coverage and a duty to defend.

113. AFCC's Policy language does not require that the insured use the advertising idea of the underlying claimants. Instead the Policy only requires that injury and damages result from the "use of another's advertising idea in your 'advertisement'." To require that the advertising idea belong to the claimant instead of simply "another," the definition of "Personal and Advertising Injury" offense (f) would need to be changed to read: "use of [*the underlying claimant's*] another's advertising idea in your 'advertisement.' " But no such language exists in the Policy and cannot be read into the Policy.

114. AFCC's Policy language also does not require that the insured wrongfully take or

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

**COMPLAINT FOR DECLARATORY RELIEF**
*Lynch and Kennedy v. American Fire*
Page 18 of 22

Case 1:17-cv-00006-JWS   Document 1-1   Filed 07/24/17   Page 19 of 23

Exhibit A
Page 19 of 23

107. The alleged use of a statutory protected advertising idea triggered AFCC's duty to defend.

### EITHER PRONG OF "ADVERTISEMENT" IS EASILY MET BY ALLEGATIONS

108. The AFCC Policy context requires giving a definitive meaning to the word "or." "Advertisement" is defined as a "notice" "to the general public *or* specific market segments." This means that an "advertisement" happens, as here, a "notice [] is . . . published to . . . specific market segments. . . ," those members of the public who view artisanal pieces which serve as an advertising idea for the product depicted when they display for sale products.

109. Although notices to the public are expressly pled, there is no requirement that a notice be "broadcast" to the general public, nor does "published" require dissemination to a larger audience.

110. The defendants' statements were allegedly "published" both to the public and to specific market segments. The underlying suits allege public statements and public display.

111. The statements attributed to defendants about the Indian Made character of their product were public pronouncements.

### AFCC'S DENIAL OF POTENTIAL COVERAGE IS IMPROPERLY PREMISED ON THE ADDITION OF WORDS OF LIMITATION NOT IN THE POLICY UNDER THE GUISE OF INTERPRETATION

112. AFCC may not add words of limitation to its Policy, under the guise of "policy interpretation," in order to avoid the potential for coverage and a duty to defend.

113. AFCC's Policy language does not require that the insured use the advertising idea of the underlying claimants. Instead the Policy only requires that injury and damages result from the "use of another's advertising idea in your 'advertisement'." To require that the advertising idea belong to the claimant instead of simply "another," the definition of "Personal and Advertising Injury" offense (f) would need to be changed to read: "use of [*the underlying claimant's*] another's advertising idea in your 'advertisement.' " But no such language exists in the Policy and cannot be read into the Policy.

114. AFCC's Policy language also does not require that the insured wrongfully take or

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

**COMPLAINT FOR DECLARATORY RELIEF**
*Lynch and Kennedy v. American Fire*
Page 18 of 22

misappropriate the advertising idea of another. Instead the Policy only requires that injury and damages result from the "use of another's advertising idea in your 'advertisement'." To require that the advertising idea be wrongfully taken or misappropriated instead of simply being "use[d]," the definition of "Personal and Advertising Injury" offense (f) would need to be changed to read: "[*misappropriation or wrongful taking*] use of another's advertising idea in your 'advertisement.' " But no such language exists in the Policy nor can it be read into the Policy.

115. Even if the AFCC Policy offense language of "use" be interpreted as "misappropriation," it may reasonably be understood to mean "misuse," and does not require a "wrongful taking" from any other party.

116. AFCC's Policy language does not avoid coverage where the advertising idea is also used by another defendant, a co-defendant, or a co-conspirator. The Policy does not limit "another" to a party outside the lawsuit or someone unrelated to the insured. The Policy simply requires that injury and damages result from the "use of another's advertising idea in your 'advertisement.'"

117. The "Personal and Advertising Injury" offense of "(f) use of another's advertising idea in your 'advertisement' " is not a specific tort or statutory violation but describes conduct that may or may not cause injury and damages. Most advertising ideas were first used by another. Injury is not inherent in the use of another's advertising idea, for example, advertising merchandise "at up to half off," as is commonly done. The Policy promises however, to defend suits alleging that "injury . . . aris[e] out of" the offense of "use of another's advertising idea in your 'advertisement'." Thus the Policy does not cover just *any* use of another's advertisement but only the "use of another's advertising idea in your 'advertisement' " where "injury" arises, and regardless of the label on the allegations.

118. L&K's interpretation of the AFCC Policy is reasonable. Even if AFCC has another reasonable interpretation, even the most reasonable interpretation of ambiguous policy language, the insured's reasonable interpretation that results in insurance coverage must be applied by a court.

119. L&K's reasonable interpretation of this "personal and advertising injury" offense results in a potential for coverage under AFCC's Policy for the *AG Info suit* triggers AFCC's duty to

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6529 Facsimile

defend its insured in those cases.

### No Policy Exclusion Eliminates AFCC's Duty to Defend

120. AFCC has asserted no exclusions as a grounds for denial of a defense.

### No Failure of Conditions is Asserted as a Grounds for Denial

121. It is clear from AFCC's denial letters that no failure to comply with policy conditions was asserted as a basis for the preclusion of coverage for its policies in force from June 26, 2014 to June 26, 2016.

### Damages are Undefined and Include "Money Ordered by a Court" Such as Fines and Penalties

122. AFCC contends that "the Policy does not provide insurance coverage for the lawsuit to the extent that such lawsuit seeks fines or penalties to the extent such fines or penalties are not awarded based upon otherwise covered damages. But as the claims asserted seek covered damages for "personal or advertising injury" pursuant to offense (f), this element is met as the IACA section expressly provides for an award of fines or penalties as a remedy for violation of that statute.

123. Nor does AFCC explain what Alaskan public policy would preclude coverage for an award of fines or penalties which is not a form of punitive damages as that term is understood under applicable Alaskan law.

### Notice to an Insured Must Include a Reasonable Explanation of the Basis for Denial

124. No factual basis for the AFCC was provided to L&K at the time of its denial of coverage. Conclusory statements are not predicated on a reasonable explanation for the basis of the denial in relation to the facts or applicable law for denial of a claim create an independent and enforceable right in favor of the insured, as here, to contest the denial itself as inadequate and incomplete so that future amendments of the grounds for denial are barred.

### First Cause of Action

### Declaratory Relief – Duty to Defend

125. L&K incorporates the allegations in the above paragraphs of this Complaint as though

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

COMPLAINT FOR DECLARATORY RELIEF
*Lynch and Kennedy v. American Fire*
Page 20 of 22

fully alleged herein.

126.    Valid contracts existed between L&K and AFCC, namely the Policy.

127.    L&K fully performed all of the obligations and conditions to be performed by it under the Policies or has been excused from performing same as a result of AFCC's breach of its duty to defend.

128.    By selling the Policy, AFCC agreed to provide a defense for suits seeking damages for "personal and advertising injury" offenses as defined in its Policy.

129.    L&K contends that the *AG Info suit* alleges facts implicating the "personal and advertising injury" coverage under the Policy thereby triggering AFCC's obligation to defend L&K.

130.    L&K is informed and believes that AFCC disputes the foregoing contentions.

131.    AFCC has denied and continues to deny that the IACA's violations charged implicate coverage under the Policy or state claims even potentially covered under the Policy and has refused to defend L&K in any of the *AG Info suit.*

132.    An actual bona fide controversy exists between L&K and AFCC that requires judicial declaration by this Court of the parties' rights and duties under the Policy, AFCC's duty to defend L&K in the Cases, and the amount of defense expenses owed by AFCC.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff L&K prays for judgment against Defendant AFCC as follows:

1.    A judicial declaration that AFCC has a duty to defend L&K in the *AG Info suit* under the Policy it issued to L&K;

2.    A determination and award of general damages consisting of all reasonable defense expenses and settlement expenses, incurred by L&K in defense of the *AG Info suit* Cases to the date of judgment herein;

3.    Award of pre-judgment interest accruing from the date of each defense invoice or any settlement payment at the statutory interest rate.

4.    Award of attorneys' fees and costs pursuant to Ak. R. Civ. P. 79 and 82;

5.    Such other and further relief as this Court may deem just and proper.

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

DATED this ___15th___ day of May, 2017.

POULSON & WOOLFORD, LLC
Attorneys for the Plaintiff

Larry R. Woolford, AK Bar No. 9806023
larry@poulsonwoolford.com

Consents to service by electronic mail
pursuant to Ak. R. Civ. P. 5.1(c)(3)

THIS MATTER IS FORMALLY
ASSIGNED TO
THOMAS G. NAVE
DISTRICT COURT JUDGE

POULSON & WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

COMPLAINT FOR DECLARATORY RELIEF
Lynch and Kennedy v. American Fire
Page 22 of 22