# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | |
|---|---|
| LYNCH AND KENNEDY DRY GOODS, INC., ) ) ) | |
| Plaintiff, ) ) | 1:17-CV-00006 JWS |
| vs. ) ) | ORDER AND OPINION |
| ) ) | [Re: Motion at docket 8] |
| AMERICAN FIRE AND CASUALTY COMPANY, ) ) ) | |
| Defendant. ) ) | |

## I. MOTION PRESENTED

At docket 8, Plaintiff Lynch and Kennedy Dry Goods, Inc. (L&K) filed a motion for partial summary judgment, arguing that Defendant American Fire and Casualty Company (American), pursuant to the insurance policy it issued to L&K (the Policy), had a duty to defend L&K and its owner Rosemary Libert (Libert) in a criminal matter brought against Libert by the U.S. Government (Government). It seeks reimbursement for the attorney's fees and costs it incurred in successfully defending Libert. American filed an opposition and a cross-motion for summary judgment at docket 21, arguing that American owes no coverage to L&K under the Policy for various reasons, including untimely notice, assumed voluntary payments, and the criminal nature of the underlying

legal action for which L&K seeks coverage. L&K filed a joint response and reply at docket 25. American replied a docket 28. Oral argument was requested but would not be of additional assistance to the court.

## II. BACKGROUND

In 2016, the Government brought criminal charges against Libert "dba Lynch and Kennedy Dry Goods, Inc." under federal statute 18 U.S.C. § 1159(a), which makes it unlawful to knowingly display or sell any good "in a manner that falsely suggests it is Indian produced . . . ." The criminal information alleged that U.S. Fish and Wildlife Service (USFWS) performed an undercover operation at L&K in July of 2014 and again in June of 2015. It alleged that during the 2014 visit an L&K employee misrepresented to an undercover USFWS agent that a bone sculpture had been made by an Alaska Native artist and that during the subsequent 2015 visit Libert herself falsely represented to an agent that a carving had been made by an Alaska Native artist.[1] The potential penalties under the statute consist of imprisonment and/or a fine.

L&K hired defense counsel, including an attorney from Washington D.C. The case against Libert ultimately proceeded to trial in Juneau for two days in September of 2016. The jury acquitted Libert of the misdemeanor charges. The successful defense of Libert cost L&K over $100,000. It subsequently notified American of the litigation, asking for recovery of its attorneys' fees based on the Policy's liability coverage for advertising injury. American denied coverage, and L&K followed with this declaratory judgment action, asking the court to find that American had a duty to defend Libert and must cover the defense costs associated with her criminal trial. Each party now requests summary judgment on the issue of coverage.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] The materiality requirement ensures that "only disputes over facts that might affect the

---

[1]Doc. 6-4 at pp. 38-42.

[2]Fed. R. Civ. P. 56(a).

outcome of the suit under the governing law will properly preclude the entry of summary judgment."[3]  Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]  However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[5]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[6]  Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[7]  Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[8]  All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[9]  However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[10]

---

[3]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4]*Id.*

[5]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[6]*Id.* at 323.

[7]*Id.* at 323-25.

[8]*Anderson,* 477 U.S. at 248-49.

[9]*Id.* at 255.

[10]*Id.* at 248-49.

Alaska substantive law applies here. The interpretation of an insurance contract is a question of law for the court.[11] The court must construe an insurance policy in accordance with ordinary and customary usage and in such a way as to give effect to an insured's reasonable expectations. "Ambiguities in an insurance policy are to be construed most favorably to an insured, but ambiguities only exist when there are two or more reasonable interpretations of particular policy language."[12]

## IV. DISCUSSION

L&K argues that the Policy covers the fees and costs she incurred in defending against the Government's charges. It relies on the business liability provision in the Policy, which covers "advertising injury." It states as follows:

(1) Business liability

    (a) We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply.[13]

Personal and advertising injury is defined under the Policy as injury "arising out of . . . [the] use of another's advertising idea in [the insured's] advertisement."[14] Advertisement is defined as "a notice that is broadcast or published to the general

---

[11]*United Servs. Auto. Ass'n v. Neary*, 307 P.3d 907, 910 (Alaska 2013).

[12]*State Farm Mut. Auto. Ins. Co. v. Dowdy*, 192 P.3d 994, 998 (Alaska 2008).

[13]Doc. 6-2 at p. 14 (Policy, Section II, A.1.a).

[14]Doc. 6-2 at p. 30 (Policy, Section II, F.14.f).

public or specific market segments about [the insured's] goods, products or services for the purpose of attracting customers or supporters."[15]

L&K argues that the Government's charges against Libert arise from Libert's and L&K employees' use of another's advertising idea, bringing the charges within the scope of business liability coverage. Parsing through the definition, L&K provides a drawn-out argument that the definition of advertising injury has been met here because there is no requirement that the insured must be accused of wrongfully using or misappropriating another's specific idea; rather, L&K argues that it suffices if the insured used an idea that should not have been used in conjunction with its goods. It argues that the Government's underlying action against Libert involved her use of the general concept of Alaska Native products as a way to sell goods. It also argues that to trigger the duty to defend the person bringing the suit against the insured does not need to be the person whose idea was used.

American disagrees that the Policy covers the Government's criminal complaint against Libert. It sets forth five reasons for its denial of coverage: (1) L&K's notice was untimely, and L&K had already voluntarily assumed the defense expenses as its own before giving any notice to American; (2) the potential fines stemming from the action do not constitute "damages" under the Policy; (3) the Policy only encompasses the duty to defend civil matters; (4) the Policy's "criminal act" exclusion applies; and (5) the Government's criminal charges do not allege any advertising injury.

**American's Notice of Denial**

L&K argues that American cannot now deny coverage based on provisions and reasons not mentioned in its coverage correspondence with L&K. Specifically, it argues that American cannot now base its denial on 1) the criminal act exclusion, 2) the argument that only civil lawsuits are covered under the Policy, or 3) the voluntary payment provision because those grounds were not mentioned in any of American's letters to L&K. In support, L&K cites *Lutz v. First Financial Insurance Company*.[16]

---

[15]Doc. 6-2 at p. 27 (Policy, Section II, F.1).

[16]247 Fed. Appx. 911 (9th Cir. 2007).

-5-

However, that case does not stand for the proposition that an insurer is limited to coverage arguments that were expressly articulated in its denial letter to the insured. Rather, the court in *Lutz* recognized that equitable estoppel principles may prevent an insurer from relying on a valid coverage defense that was not mentioned to the insured. Equitable estoppel requires "the assertion of a position by conduct or word, reasonable reliance thereon by another party, and resulting prejudice."[17]

Here, there has been no showing by L&K of reliance or any prejudice stemming from American's correspondence. There can be no prejudice from American's failure to state every possible ground for denying coverage because L&K did not notify American of the Government's charges against its owner, Libert, until after it had hired counsel, defended the charges, and incurred all the expenses for which it now seeks reimbursement.

L&K argues that American's failure to raise all of its possible defenses has prejudiced it not in the underlying action but in this specific lawsuit because coverage could now be denied on grounds not previously stated. In other words, the new grounds for denial have made this declaratory judgment action harder. The court agrees with American's assessment of this position:

> If this argument is correct, then any time an insurer fails to mention a valid coverage defense in its first correspondence, the insurer will be forever estopped form raising that defense because the subsequent reliance on that defense – especially a valid one – would harm the plaintiff. Plaintiff's argument becomes a tautology. Anytime an insurer fails to articulate a coverage defense, it will be forever estopped from ever raising it again; raising it the future will be harmful to the insured.[18]

---

[17] *Id.* at 913.

[18] Doc. 28 at p.3.

Indeed, L&K's argument does not square with Alaska law. The Alaska Supreme Court has held that coverage defenses not stated in denial correspondence are not deemed waived.[19] Furthermore, American expressly reserved its right to raise additional coverage defenses.

**Criminal Nature of the Underlying Action**

The Policy covers any "damages" that stem from an advertising injury and imposes a duty on American to defend the insured against any "suit" seeking such damages. American argues that the Government did not bring any "suit" against Libert, but rather, prosecuted her for a violation of a federal statute. It did not seek damages for any injury incurred because of the alleged conduct, but rather, it only sought to impose the fine and/or imprisonment authorized under the statute. It relies on the Policy's definition of suit: "'Suit' means a *civil* proceeding in which damages because of . . . 'personal and advertising injury' . . . are alleged."[20]

The Policy unambiguously states that the insured has a duty to defend *civil* suits seeking damages. As other courts addressing this same issue have recognized, Black's Law Dictionary defines "civil" as something related to private rights and remedies as opposed to criminal proceedings and a "civil action" as noncriminal litigation.[21] Here, the Government brought a criminal prosecution against Libert, and the information filed against her clearly indicated as much. There was no "suit" to trigger American's duty to defend under the Policy.

Furthermore, the criminal fines that L&K risked having to pay because of the charges brought against Libert do not constitute damages. In bringing the criminal charges, the Government was not seeking to compensate an individual for harm suffered as a result of Libert's alleged violation but to enforce the purpose behind the statute, which is to require those who market art and crafts to honestly represent the

---

[19]*Jones v. Horace Mann Ins. Co.*, 937 P.2d 1360, 1365 (Alaska 1997).

[20]Doc. 6-2 at p. 31 (Policy, Section II, F.18) (emphasis added).

[21]*Derderian v. Essex Ins. Co.*, 44 A.3d 122, 128 (R.I. 2012).

degree of Indian involvement.[22] The fine the Government sought was established by statute to deter such conduct.[23] The Alaska Supreme Court's decision in *O'Neill Investigations, Inc. v. Illinois Employers Ins. of Wausau*[24] lends support to the court's conclusion. In *O'Neill* the court found that the restitution sought pursuant to a civil lawsuit brought by the state government under the state's consumer protection act did not constitute damages under the defendant's insurance policy to trigger the insurer's duty to defend that suit. The court reasoned that the primary purpose of the civil suit was to protect the public at large and that the main remedy sought by the state government was an injunction to halt the offending conduct. The lawsuit did not seek to redress any harm suffered by an individual and the request for restitution was only incidental to the relief sought on behalf of the larger public.[25] If restitution in a civil consumer protection lawsuit does not constitute damages, certainly criminal fines sought in conjunction with a criminal prosecution do not.

  L&K argues that the Government potentially could have brought a civil action against Libert under 25 U.S.C. § 305(e). Under that statute, the Attorney General may seek a civil recovery on behalf of an Indian, tribe, or Indian organization. L&K's argument does not hold weight. The Government did not bring a civil action under 25 U.S.C. § 305(e). It brought a criminal action under a completely different statute. As noted by American in its reply brief:

> The plaintiff tries to characterize the possible civil suit as a "lesser included" matter. Not so. In a criminal proceeding, the government can charge a higher level felony but obtain a conviction for a lower level felony or misdemeanor. . . . A civil recovery is not a "lesser included" claim to a criminal trial. A civil suit is a qualitatively different proceeding. In fact, a civil

---

[22]Doc. 6-4 at p. 36.

[23]*See Travelers Ins. Co. v. Waltham*, 772 F. Supp. 814, 828 (D. Mass 1988).

[24]636 P.2d 1170 (Alaska 1981).

[25]*Id.* at 1175-76.

recovery is not possible under the criminal charge which the government brought against the plaintiff.[26]

Moreover, L&K's more general argument that even the possibility of the Government seeking civil damages is sufficient to trigger coverage is unavailing. As stated by American, "[L&K's] argument . . . that an insurer must envision any conceivable amendment to a complaint, and provide coverage if such an amendment, however remote or unexpected, might be covered . . . goes too far and cannot be squared with Alaska law."[27]

Relatedly, coverage is precluded by the Policy's criminal act exclusion. The exclusion states that the Policy does not apply to advertising injury that "arise[es] out of a criminal act committed by or at the direction of the insured."[28] The federal criminal information filed against Libert alleges a criminal act. Therefore, even if there had been injury and damages, they would have arisen from a criminal violation triggering the exclusion.[29]

L&K alleges that Libert was eventually acquitted, proving that there was no criminal act committed. However, the coverage issue turns on the operative complaint, which in this situation was a criminal information, and any other ascertainable facts stemming from the complaint. The veracity of the allegations does not matter. Whether those allegations expose the insured to covered damages is the determinative question. Here, there was no such exposure.

---

[26]Doc. 28 at p. 14.

[27]Doc. 28 at p. 16.

[28]Doc. 6-2 at p. 23 (Policy, Section II, B.1.r).

[29]*Rose Acres Farms, Inc. v. Columbia Cas. Co.*, 662 F.3d 765, 769 (7th Cir. 2011) (applying the criminal acts exclusion to deny coverage in a civil antitrust case where the damages stemmed from the insured's "[p]articipation in a conspiracy to violate federal antitrust laws [which] is both deliberate and criminal, and is thus excluded . . . .").

**Advertising Injury**

Aside from the criminal nature of the underlying action, American is not obligated to reimburse L&K for its costs in defending the prosecution because it did not involve any advertising injury that would trigger coverage under the Policy. As noted above, advertising injury "means injury . . . arising out of . . . [t]he use of another's advertising idea in [the insured's] advertisement."[30] The court agrees with American's identification of the shortcomings of L&K's argument:

> Plaintiffs long and convoluted discussion fails to address [the] straightforward missing elements in the [G]overnment's criminal charges which would have been necessary to fall within the definition. Whose "advertising idea" was used by Mrs. Libert? Who suffered injury and sought reimbursement for it? No one.[31]

L&K's assertion that coverage does not depend on the insured using a particular person's idea but rather is broad enough to cover false advertisement is unavailing. Instead, the court finds the Seventh Circuit's reasoning in *Rose Acre Farms* persuasive on the issue. In that case, the court looked at whether a civil complaint alleging an antitrust violation for fixing egg prices fell under the "personal and advertising injury" coverage of the insured's policy. It concluded that the history of the provision "makes clear that coverage is limited to liability to the 'other' whose advertising idea is used by the insured without the 'other's' permission."[32] The Government's action against Libert does not allege any use of its advertising idea, or anyone else's for that matter. Moreover, the allegations in the criminal information against Libert did not involve any advertisements. Libert and another L&K employee were alleged to have falsely represented to an undercover agent posing as a customer that a bone carving was made by an Alaska Native artist when it in fact was not. There was no broadcast or

---

[30]Doc. 6-2 at p. 30 (Policy, Section II, F.14.f).

[31]Doc. 21 at p. 28

[32]622 F.3d at 768.

published message to the public, as required under the Policy. The court agrees with American that there are no inferences in the Government's information against Libert to suggest that any public dissemination regarding the source of the bone carvings occurred.

**Other Grounds for Denial of Coverage**

American also argues that L&K's failure to notify it of the case against Libert until after its conclusion provides a valid basis for denial of coverage. Under Alaska law, an insurer can deny coverage based on untimely notice if it can prove that the late notice somehow prejudiced its interests.[33] American argues that as a matter of law, an insurer is prejudiced when it receives notice of an action after its resolution because it no longer has the opportunity to control the litigation and the defense costs. It argues that it did not have the opportunity to limit and control such costs, and it was consequently prejudiced because L&K hired out-of-state counsel with a rate much higher than that of local counsel. L&K counters that the defense was ultimately successful and therefore American was not prejudiced by the late notice and further argues that any disagreement American has with the attorney's rates could be challenged separately, abating any prejudice. While the court is inclined to agree with American, it need not definitely decide the issue of prejudice, given the various other grounds for denial of coverage here.

The final basis for American's denial is the Policy's voluntary payment provision. That provision provides that American's consent is needed before an insured can incur costs or make payments: "No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [American's] consent."[34] There is nothing ambiguous about the provision. Consent is required before an insured can incur any costs or make any payments.

---

[33]*Weaver Bros. Inc. v. Chappel*, 684 P.2d 123, 126 (Alaska 1984).

[34]6-2 at p. 27 (Policy, Section II, E.2.d).

-11-

Unlike the late notice defense, there is nothing to suggest prejudice must be shown before an insurer can rely on this provision.[35]

### V. CONCLUSION

Based on the proceeding discussion, L&K's motion for partial summary judgment at docket 8 is DENIED, and American's Cross Motion for Summary Judgment at docket 21 is GRANTED.

DATED this 2nd day of January 2018.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[35] *See West Bend Mut. Ins. Co. v. Arbor Homes, LLC*, 703 F.3d 1092, 1095-97 (7th Cir. 2013); *MacDermid, Inc. v. Travelers Indem. Co.*, 2017 WL 2622646, at *9 (D. Conn. May 19, 2017) (noting that court in other jurisdictions have found that an insurer need not demonstrate prejudice to invoke the voluntary payments provision).